

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore)

No: 1:97-cr-00365-CCB-7
Honorable Judge Catherine C. Blake

**UNITED STATES OF AMERICA**

v.

**JOVAN POWELL**

Defendant/Petitioner

**DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO TITLE 18 U.S.C. 3582**

JOVAN POWELL
32928-037
USP LEWISBURG BOX 1000
LEWISHBURG PA 17837

(Defendant is incarcerated)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore)

No: 1:97-cr-00365-CCB-7
Honorable Judge Catherine C. Blake

UNITED STATES OF AMERICA

v.

JOVAN POWELL

Defendant/Petitioner

## DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO TITLE 18 U.S.C. 3582

Comes now the Defendant, **JOVAN POWELL**, who files this petition for modification of sentence pursuant to Title 18 U.S.C. 3582 and states in support the following:

Jovan Powell was indicted for a violation of Title 21 USC 841(a)(1) and Title 21 USC 846 (cocaine base) on October 3, 1997 and Powell arrested as of October 17, 1997. The indictment specified that provision of Section 841 was violated to distribute and possess, however there were no indications of specific drug amounts..

A jury trial convened on August 31, 1998, and the Defendant was found

Page -1-

guilty on November 9, 1998. The sentence was imposed on March 8, 1999 the court imposed a sentence of a total term of 360 months (30 years) with 60 months of supervised release.

The issues of cocaine base was brought to the court's attention by the presentence investigation report and considered as part of the guidelines and sentencing. According to recent amendments of the sentencing commission's crack cocaine guidelines, there is an authorized judicial adjustment downward by a range of two levels as to the base offense level assigned to each threshold quantity of crack cocaine listed in the Drug Quantity Table in §2D1.1. The Defendant believes that he is entitled to a review of his sentence on the basis that his sentence was imposed with consideration of (1) unconstitutional mandatory guidelines, and (2) the cocaine base guidelines which have now been retroactively reduced.

In addition, a district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine that, in this particular case, a within-Guidelines sentence is **"greater than necessary"** to serve the objectives of sentencing, §3553(a) and the Defendant's position avers that this includes 'criminal history' as part of the guidelines invalidated as mandatory within the context of the decision of the United States Supreme Court in Kimbrough v United States  552 U.S. __ (2007).

Defendant Jovan Powell is currently incarcerated (BOP#32928-037) USP Lewisburg, PA 17837 with a release date of April 2, 2024.

## U.S. SENTENCING COMMISSION VOTES UNANIMOUSLY TO APPLY AMENDMENT RETROACTIVELY FOR CRACK COCAINE OFFENSES

As of November 1, 2007, pursuant to 28 U.S.C. § 994(a) and (p), the United States Sentencing Commission Amendment 9, became effective which pertains to offenses involving cocaine base ("crack") has the effect of lowering the guideline sentencing range and became effective November 1, 2007.

**The crack cocaine amendment adjusts downward by two levels the base offense level assigned to each threshold quantity of crack cocaine listed in the Drug Quantity Table in §2D1.1.** The amendment assigns, for crack cocaine offenses, base offense levels corresponding to guideline ranges that include the statutory mandatory minimum penalties for cocaine base.

Not every crack cocaine offender will be eligible for a lower sentence under the decision. A Federal sentencing judge will make the final determination of whether an offender is eligible for a lower sentence and how much that sentence should be lowered under the parameters of 18 U.S.C. 3553. That determination

will be made only after consideration of many factors, including the Commission's direction to consider whether lowering the offender's sentence would pose a danger to public safety.

**BACKGROUND OF 18 UNITED STATES CODE 3582 REDUCTIONS**

Subsection (c) of 18 U.S.C. 3582 provides that a court may not modify a sentence except as described in the subsection. The subsection provides "safety valves" for modification of sentences in three situations:

(1) The first "safety valve" applies, regardless of the length of sentence, to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would 'be inequitable to continue the confinement of the prisoner. In such a case, under subsection (c)(l)(A), the Director of the Bureau of Prisons could petition the court for a reduction in the sentence, and the court could grant a reduction if it found that the reduction was justified by "<u>extraordinary and compelling reasons</u>" <u>and was consistent with applicable policy statements issued by the Sentencing Commission</u>

(2) Subsection (c)(1)(B) simply notes the authority to modify a sentence if modification is permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.

(3) Another "safety valve," set forth in subsection (c)(2), permits the court to reduce a term of imprisonment, upon motion of the defendant or the Director of the Bureau of Prisons or on its own motion, if the term was based on a sentencing range in the applicable guideline that was lowered by the Sentencing Commission after the defendant's sentence was imposed and if such a reduction is consistent with applicable policy statements of the Sentencing Commission.

The value of the forms of "safety valves" contained in this subsection lies in the fact that they assure the availability of specific review and reduction of a term of imprisonment for **"extraordinary and compelling reasons"** and **to respond to changes in the guidelines. The approach taken keeps the sentencing power in the judiciary where it belongs, yet permits later review of sentences in particularly compelling situations.**

Public Law 98-473, Senate Rept. 225, page 121 (reprinted 1984) U.S. Code and Cong. Admin. News page 3304.

## THE COURT MAY NOW CONSIDER THE MANIFEST INJUSTICE OF COCAINE V COCAINE BASE DISPARITY

The court may now consider downwardly resentencing under the advisory sentencing format, that the application of the conversion of 100-1 for cocaine base created manifest injustice.

With the recent change in the legal landscape, "the net result [of Booker] was to delete the mandatory nature of the Guidelines and transform them to advisory guidelines for the information and use of the district courts in whom discretion has now been reinstated". United States v.Ordaz, 398 F.3d 236, 239 (3d Cir. 2005).

Defendant Powell proffers, in view of new judicial discretion, that the court may take judicial notice of the position of the United States Sentencing Commission and respond to the recommendations of the Commission as to the drug quantity ratios. The United States Sentencing Commission, in its Cocaine and Federal Sentencing Policy Report of 1995 found that:

> "Because crack and powder are two forms of the same drug, with one form produced by a simple conversion process applied to the other, the vastly different ratios between the two forms has created tremendous anomalies in the federal sentencing system.
> The 100-to-1 quantity ratio between crack and powder cocaine, however, tends to confound that assumption. Issues of "fairness" or "just punishment" not to mention frustration of some congressional objectives result when relatively low-level crack retailers receive higher sentences than the wholesale-level cocaine dealer from whom the crack sellers originally purchased the powder to make the crack....Congress attempted to frame a national policy that would be applied uniformly across the country in federal drug cases. The Commission's research, however, suggests that uniform application is not occurring... the Commission notes that there is no

precise method by which one can determine the optimal penalty differential between drugs or even between kinds of offenses....Nevertheless, the Commission firmly concludes that it cannot recommend a ratio differential as great as the current 100-to-1 quantity ratio. ...

Several factors lead the Commission to a conclusion that a 100-to-1 differential cannot be recommended. First, when Congress established the quantity ratio in 1986, there were no sentencing guidelines; rather, the guidelines took effect in 1987 and were not fully implemented until 1989. Accordingly, Congress had only the possibility of an enhanced ratio to look to in capturing, in a sentencing structure, the additional harms that legislators felt inhered in crack cocaine. Therefore, to the extent that the guidelines now provide a punishment for some of those same factors subsumed in the ratio, those factors generate an enhancement both through an increased ratio differential and through guideline adjustments. In short, they are doubly punished through the interplay of the two structures. Thus, concerns about unnecessarily duplicative punishment between the more finely calibrated sentencing guidelines and the broader brush 100-to-1 quantity ratio explain, but only partially, the Commission's conclusion that the 100-to-1 quantity ratio should be reconsidered.

Another central basis for the Commission's rejection of this ratio is the extreme anomalies in sentencing produced by such a high differential in penalties between two easily convertible forms of the same drug. For all of these reasons, the Commission concludes that the 100-to-1 quantity ratio that presently drives sentencing policy for cocaine trafficking offenses should be re-examined and revised.

The Defendant requests that the trial court take judicial notice of the

position of the Sentencing Commission as to the disparity between sentences for cocaine base and cocaine. Under the rules of evidence, a court may take judicial notice of a fact generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. A court shall take judicial notice if requested by a party and supplied with the necessary information and may be taken at any stage of the proceeding. Federal Rules of Evidence, Rule 201; see, e.g., Buczek v. Continental Cas. Ins. Co., 378 F.3d 284 C.A.3 (N.J., 2004); Washington Post v. Powell, 935 F.2d 282, 291 (D.C. Cir. 1991)(appellate court may judicially notice existence and content of newspaper articles); MGIC Indemnity Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)(court may judicially notice matters of public record outside the pleadings).

Defendant requests that the district court take into consideration the Sentencing Commission's viewpoint that the 100-1 proration creates a "manifest injustice" under the premise Title 18 U.S.C. 3553 now allows such review under an advisory sentencing format.

The sentencing court did not address this express issue, thereby leaving this sentencing issue unresolved which could have mitigated Defendant's sentence and allowed the minimum mandatory of 10 years to be imposed.

The Defendant suggests that for the purpose of consideration of these issues and the mitigating impact upon his sentence a review would have as to the guidelines imposed in this case, the trial court's consideration of the factors under 18 U.S.C. 3553 pursuant to the Due Process Clause of the Fifth Amendment to the United States.

## THE IMPACT OF BOOKER AND KIMBROUGH TO RESENTENCING

United States v. Booker's requirement that the district courts treat the United States Sentencing Guidelines as advisory applies to the resentencing of defendants pursuant to 18 U.S.C. § 3582(c). See United States v. Booker, 543 U.S. 220, 245-46 (2005). Therefore the Defendant proffers that § 3582(c)(2) proceedings fall within the scope of Booker and this court's jurisdiction.

### A. Applicability of *Booker* to § 3582(c)(2)

[1] As a general matter, courts may not alter a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c); United States v. Hovsepian, 307 F.3d 922, 927 (9th Cir. 2002) ("District courts do not have inherent authority to resentence defendants at any time.") (quoting United States v. Stump, 914 F.2d 170, 172 (9th Cir. 1990)).

However, § 3582(c)(2) creates an exception in case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has

subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendantor the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. See Section 18 U.S.C. § 3582(c)(2).

Under this section, a district court can re-sentence a defendant whose sentencing range has been lowered by the Sentencing Commission pursuantto28 U.S.C. § 994(o). This allows the district court to recalculate the defendant's sentencing range using the newly reduced Guideline, and then determine an appropriate and reasonable sentence in accordance with the § 3553(a) factors. See Kimbrough v United States 552 U.S. __ (2007).

The clear language of Booker makes the range advisory and Booker explicitly stated that, "as by now should be clear, [a] mandatory system is no longer an open choice."Booker, 543 U.S. at 263; see also id. at 264 (noting that district courts are "not bound to apply the Guidelines").

Although the Court acknowledged that Congress had intendedtocreate a mandatory Guidelines system, Booker stressed that this was not an option: "[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not

a choice that remains open. . . . [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." Id. at 265. The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.

In fact, the Court emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. When the government suggested, in Booker, that the Guidelines be considered advisory in certain, constitutionally compelled cases, but mandatory in others, the Court quickly dismissed this notion, stating, "we do not see how it is possible leave the Guidelines as binding in other cases. . . . [W]e believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create." Id. at 266.

In short, Booker expressly rejected the idea that the Guidelines might be advisory in certain contexts but not in others, and Congress has done nothing to undermine this conclusion. Because a "mandatory system is no longer an open choice," id. at 263, district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2).

The Defendant is now eligible for a §3582(c)(2) re-sentencing because the Sentencing Commission has lowered the applicable Guidelines range. The Defendant argues that when the district court reconsiders his sentence pursuant to § 3582(c)(2) — a proceeding that occurred only because the Sentencing Commission lowered the applicable sentencing range — the district court should have discretion to impose a non-Guidelines sentence.

The Defendant proffers United States v. Ono, 72 F.3d 101, 102 (9thCir. 1995), which stated, "the purpose of a § 3582 motion is resentencing." While §3582(c)(2) proceedings do not constitute full resentencings, their purpose is to give defendants a new sentence. This resentencing, while limited in certain respects, still results in the judge calculating a new Guideline range, considering the § 3553(a) factors, and issuing a new sentence based on the Guidelines.

As discussed above, Booker excised the statutes that made the Guidelines mandatory and rejected the argument that the Guidelines might remain mandatory in some cases but not in others. Booker, 543 U.S. at 263-66. Mandatory Guidelines no longer exist, in this context or any other.

**B. Consistency with Applicable Policy Statements**

Section 3582(c)(2) permits the court to reduce a defendant's sentence after considering the §3553(a) factors "if such a reduction is consistent with applicable

policy statements issued by the Sentencing Commission." 18 U.S.C.§ 3582(c)(2).

Under Booker, to the extent that the policy statements would have the effect of making the Guidelines mandatory (even in the restricted context of §3582(c)(2)), they must be void. Section 1B1.10(b) of the Guidelines states: In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a 331defendant eligible for consideration under 18 U.S.C.§ 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced.. . .USSG § 1B1.10(b). Application note 2 adds: In determining the amended guideline range under subsection (b), the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced.

All other guideline application decisions remain unaffected. See USSG §1B1.10 app. n.2. Finally, the "Background" portion of §1B1.10 states, in part: The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right. USSG § 1B1.10 cmt, background.

Page -13-

U.S.S.G .§ 1B1.10(b)states only that the court "should consider the term of imprisonment that it would have imposed had the amendment . . .been in effect" and the newly calculated range could still be applied in an advisory, rather than mandatory fashion.

Finally, as discussed above, Booker makes clear that the Guidelines are no longer mandatory **in any context** — its effect is not restricted to the "de novo resentencing".

### KIMBROUGH V UNITEDSTATES 552 U.S. __ (2007)

Under the statute criminalizing the manufacture and distribution of cocaine, 21 U. S. C. 841, and the relevant Federal Sentencing Guidelines, a drug trafficker dealing in crack cocaine is subject to the same sentence as one dealing in 100 times more powder cocaine.

The United States Supreme Court in Kimbrough v United States 552 U.S. __ (2007) held that under United States v. Booker, 543 U. S. 220 , the cocaine Guidelines, like all other Guidelines, are advisory only, and the Fourth Circuit erred in holding the crack/powder disparity effectively mandatory. A district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine that, in the particular case, a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing,

§3553(a). In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder offenses. Pp. 5–21. The Court further held that (a) Crack and powder cocaine have the same physiological and psychotropic effects, but are handled very differently for sentencing purposes. The relevant statutes and Guidelines employ a 100-to-1 ratio that yields sentences for crack offenses three to six times longer than those for offenses involving equal amounts of powder. Thus, a major supplier of powder may receive a shorter sentence than a low-level dealer who buys powder and converts it to crack. Pp. 5–11.

Continuing, the Court stated (1) The crack/powder disparity originated in the Anti-Drug Abuse Act of 1986 (1986 Act), which created a two-tiered scheme of five and ten-year mandatory minimum sentences for drug manufacturing and distribution offenses. Congress apparently adopted the 100-to-1 ratio because it believed that crack, a relatively new drug in 1986, was significantly more dangerous than powder. Thus, the 1986 Acts five-year mandatory minimum applies to any defendant accountable for 5 grams of crack or 500 grams of powder, and its ten-year mandatory minimum applies to any defendant accountable for 50 grams of crack or 5,000 grams of powder.

In developing Guidelines sentences for cocaine offenses, the Sentencing Commission employed the statute's weight-driven scheme, rather than its usual empirical approach based on past sentencing practices. The statute itself specifies only two quantities of each drug, but the Guidelines used the 100-to-1 ratio to set sentences for a full range of drug quantities. Based on additional research and experience with the 100-to-1 ratio, the Commission later determined that the crack/powder differential does not meet the objectives of the Sentencing Reform Act and the 1986 Act. The Commission also found the disparity inconsistent with the 1986 Acts goal of punishing major drug traffickers more severely than low-level dealers, and furthermore observed that the differential fosters a lack of confidence in the criminal justice system because of a perception that it promotes an unwarranted divergence based on race.

The Court maintained that the Commission has several times sought to achieve a reduction in the crack/powder ratio. Congress rejected a 1995 amendment to the Guidelines that would have replaced the 100-to-1 ratio with a 1-to-1 ratio, but directed the Commission to propose revision of the ratio under the relevant statutes and Guidelines. Congress took no action after the Commission's 1997 and 2002 reports recommended changing the ratio. The Commission's 2007 report again urged Congress to amend the 1986 Act, but the Commission also

adopted an ameliorating change in the Guidelines. The modest amendment, which became effective on November 1, 2007, yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder. The Commission thus noted that it is only a partial remedy to the problems generated by the crack/powder disparity.

The federal sentencing statute, as modified by Booker, requires a court to give respectful consideration to the Guidelines, but "permits the court to tailor the sentence in light of other [§3553(a)] concerns as well," 543 U. S., at 245–246 The Defendant's position avers that this includes 'criminal history' as part of the guidelines invalidated as mandatory within the context of the decision of the United States Supreme Court in Kimbrough v United States 552 U.S. __ (2007) and that the Career Offender of U.S.S.G section 4 is included as not mandatory and the court may sentence below even with a defendant in career offender status.

## EVIDENTIARY HEARING

In order to be entitled to an evidentiary hearing, the habeas Movant need only allege reasonably specific non-conclusory facts that if true, would entitled him to relief. The Defendant claims that the above allegations are not contradicted by the record and the claim is not frivolous. Aron v. United States, 291 F.3d 708 (11th Circuit 2002). On this basis, The Defendant respectfully requests an

evidentiary hearing only if this court deems such to be necessary, equitable and just.

Defendant Jovan Powell moves this court to appoint local counsel in this cause pursuant to Title 18 USC 3006A(g) and local rules.

### REQUEST FOR SENTENCING REDUCTION AND RELIEF

The Defendant, Jovan Powell, respectfully moves this court for a final determination of that the Defendant is eligible for a lower sentence within the parameters of 18 U.S.C. 3553 for "extraordinary and compelling reasons" and to respond to changes in the guidelines. The Defendant suggests that his sentence is "greater than necessary", that a new lower sentence would be equitable, reasonable, maintain the integrity of respect for the law, and falls within the parameters of 18 USC 3553 for which the Defendant is eligible and any other relief which this court may deem equitable and just.

Respectfully Submitted,

/s/ *Jovan Powell*
**JOVAN POWELL**
**32928-037**
**USP LEWISBURG BOX 1000**
**LEWISHBURG PA 17837**

## CERTIFICATE OF SERVICE

I certify that the original and sufficient copies of the foregoing were mailed via United States Mail with first class postage to: United States District Court District of Maryland, U.S. Courthouse, 101 West Lombard Street, Baltimore, Maryland 21201, and a copy to U.S. Attorney's Office, 36 South Charles Street, Baltimore, Maryland 21201 this 30th day of April 2008.

/s/ *Jovan Powell*
Jovan Powell